FILED
01/22/2025
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 10, 2024

## STATE OF TENNESSEE v. TIMOTHY EUGENE SANDERS

**Appeal from the Criminal Court for Davidson County**
**No. 2023-A-381      Cheryl A. Blackburn, Judge**

_____

## No. M2024-00076-CCA-R3-CD

_____

A Davidson County jury convicted Defendant, Timothy Eugene Sanders, of two counts of carjacking and one count of robbery. Defendant contends on appeal that the evidence is insufficient to support his convictions and that the trial court failed to properly charge the jury regarding use of force. We find all of Defendant's issues waived for insufficient briefing and therefore affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which TOM GREENHOLTZ and KYLE A. HIXSON, JJ., joined.

Nathan Cate, Nashville, Tennessee, for the appellant, Timothy Eugene Sanders.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Gracie Moore and Megan King, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

*Factual and Procedural History*

Moses and Stephanie Lozano, the victims, vacationed in Nashville at the end of November 2020 to celebrate their wedding anniversary. The morning of November 30, Mr. and Mrs. Lozano were packing their car to leave, which was parked on Second Avenue. Defendant approached them and asked for money. Mr. Lozano gave Defendant five dollars. Defendant asked Mr. Lozano for some alcohol. Mr. Lozano declined Defendant's request.

Defendant began to walk away as the victims continued loading their car. Suddenly, Defendant jumped into the front seat. Mr. Lozano explained at trial he had left the car running to heat the seats for his wife. Mrs. Lozano saw Defendant and yelled, "He's going to steal the car." Mr. Lozano ran around to the driver's door to stop Defendant from taking the car. Mr. Lozano grabbed Defendant as Defendant put the Lozanos' car in gear. Defendant elbowed Mr. Lozano in the face, breaking his glasses. A shard of broken glass got in Mr. Lozano's eye, causing an injury for which he had to see an ophthalmologist for a year and a half. Mr. Lozano fell to the ground. A surveillance recording from a nearby business documenting the above events was introduced at trial.

Unknown to Defendant, Mrs. Lozano had climbed into the back seat and tried unsuccessfully to take the keys out of the ignition while Defendant and Mr. Lozano fought. Mr. Lozano watched as Defendant drove away with his car and his wife. The rear passenger door was open, and Mrs. Lozano's legs hung out of the rear passenger door as Defendant sped away. Mr. Lozano chased the car for about a block when Defendant turned down another street and Mr. Lozano lost sight of the car. Mr. Lozano's cell phone was in the car, so a bystander called 911.

Once Mrs. Lozano grabbed Defendant and he realized that Mrs. Lozano was in the car, he told her that she had "made him a kidnapper." He told her to get out of the car but did not stop. Mrs. Lozano did not feel like she could safely exit the vehicle. Defendant demanded that Mrs. Lozano keep her hands on the passenger seat where he could see them. Defendant repeatedly asked her, "Where's the gun?" Mrs. Lozano told him there was no gun in the car. Defendant pounded the dash with his fist and demanded that Mrs. Lozano tell him where the gun was located. Mrs. Lozano thought Defendant was confused because he did not expect her to be in the car.

Defendant dumped out the contents of Mrs. Lozano's purse. Mrs. Lozano offered to give Defendant some money in exchange for their car and her freedom. Defendant stopped at two ATMs and attempted unsuccessfully to withdraw money. Defendant became "aggressive" when he could not withdraw the money and hit the car with his hand. Defendant accused Mrs. Lozano of lying about her ATM PIN. He never hit Mrs. Lozano, but Mrs. Lozano was afraid and wanted only to survive the encounter. Finally, after a stop at a third ATM, Defendant withdrew $300 from Mrs. Lozano's bank account. Defendant also took Mr. Lozano's wallet and around $100 from Mrs. Lozano's wallet. After Defendant withdrew money from the ATM, he told Mrs. Lozano she had "one more f[***]ing chance to get out" of the car. Mrs. Lozano took her chance and got out of the car. She found a nearby family and asked them to call the police because her cell phone was still in the car.

- 2 -

Police retrieved Mrs. Lozano and reunited her with Mr. Lozano. A surveillance recording from the third ATM, showing Defendant withdrawing money from the ATM, Mrs. Lozano exiting the vehicle, and Defendant driving away, was introduced at trial.

Metro Nashville Police Department ("MNPD") Officer Rachel Susee responded to Second Avenue and spoke with Mr. Lozano, who was "distraught" and "frantic," saying that his wife had been taken. Officer Susee stayed with Mr. Lozano until Mrs. Lozano was brought back between one and a half to two hours later. The Lozanos listed to Officer Susee all the items in the stolen car, and Officer Susee uploaded information about the car to a database to alert other officers.

MNPD Detective Jeffrey Jobe arrived at the Second Avenue scene and spoke with the Lozanos, who gave Detective Jobe a description of Defendant and told him what happened. Detective Jobe obtained surveillance video from a nearby business and from the third ATM. Detective Jobe circulated still photos from the videos throughout MNPD and learned that Defendant was the man who had taken the Lozanos' car.

Detective Jobe later emailed the Lozanos a virtual photo lineup, which he instructed them to view separately. Mr. and Mrs. Lozano both identified Defendant as the person who stole their car. The Lozanos never recovered their car or their possessions that were inside. Photographs of their car at an impound lot, with considerable damage to it and trash inside it, were admitted as exhibits at trial. Mr. Lozano testified at trial that neither the damage nor the trash were present when Defendant stole their car because they "[did]n't treat vehicles like that."

The Davidson County Grand Jury indicted Defendant for two counts of carjacking, two counts of aggravated kidnapping, and one count of robbery. The State offered the above proof at trial.

Defendant testified at trial as to his version of events, which differed from the Lozanos'. Defendant said that he was "coming down off crack" on November 30, 2020, that he was homeless, and that he "was trying to hustle up some money to be able to get [himself] some food and stuff like that." Defendant said that after Mr. Lozano gave him five dollars, he saw Mr. Lozano put his wallet back in his car. Defendant decided at that point to steal the car. Defendant did not believe anyone else was in the vehicle before he got in and was already in the vehicle before Mr. Lozano tried to stop him. He claimed he did not fight Mr. Lozano and that Mr. Lozano must have been injured when he fell after Defendant drove away.

Defendant did not realize that Mrs. Lozano was in the car until she grabbed him. He claimed he tried to stop the car to release Mrs. Lozano, but she told him to drive to an

ATM so she could give him some money. Defendant confirmed that he unsuccessfully attempted to withdraw money from two ATMs. Defendant said that Mrs. Lozano could have gotten out at either of the first two ATMs and he would not have stopped her. Defendant said he never intended to "trap" Mrs. Lozano in the vehicle and that he never wanted her there in the first place. He confirmed that he never touched or hit Mrs. Lozano. Defendant apologized "for everything [he] put [the Lozanos] through" and maintained that he did not intend for anyone to get hurt.

Defendant conceded on cross-examination that he realized that the Lozanos were close by the vehicle when he tried to steal it. He maintained that "the vehicle was already in motion" when Mr. Lozano tried to stop him from stealing the car. Defendant admitted that he never had the Lozanos' permission to take their vehicle and he had no right to use force to keep it. Defendant said that Mrs. Lozano "had a gun in the back seat" and "didn't want to get his head blown off." He claimed though he never saw a gun, he nonetheless saw Mrs. Lozano reaching for a gun and "kn[e]w when somebody's reaching for a weapon." He conceded that he knew Mrs. Lozano offered to withdraw money from an ATM to get her car back, but he had no intent to return it to her.

A jury convicted Defendant as charged of two counts of carjacking and one count of robbery, acquitting him of the aggravated kidnapping charges. The trial court ordered an effective twenty-year sentence. Defendant appeals.

*Analysis*

Defendant argues on appeal that the evidence is insufficient to support his convictions because the proof established that any violence occurred after the taking rather than before or contemporaneously and that the trial court erred in failing to properly instruct the jury on use of force. The State argues that Defendant has waived his issues for insufficient briefing; alternatively, that the evidence is sufficient and the trial court properly instructed the jury.

An appellant's brief must contain "[a]n argument . . . setting forth: (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tenn. R. App. P. 27(a)(7). This Court's rules similarly state that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b).

As it relates to sufficiency of the evidence, Defendant's brief contains *some* citations to authority—but only as it relates to the standard of review. His substantive argument as

- 4 -

applied to this case consists of four conclusory sentences without a citation to authority or a reference to the record to be found. And, as the State points out, his argument makes no factual or legal distinction between his convictions or the victims of the offenses. We decline to "construct developed arguments from his conclusory statements" and search the record for information necessary to resolve them. *State v. Cunningham*, No. M2023-00909-CCA-R3-CD, 2024 WL 3634259, at *2 (Tenn. Crim. App. Aug. 2, 2024), *no perm. app. filed*. This claim is waived for our consideration.

Turning to the jury instruction issue, Defendant claims that the trial court improperly instructed the jury on use of force. Defendant moved the trial court to instruct the jury that "[f]orce used to retain property already unforcibly taken or force used to escape . . . is not the force essential to satisfy the element of force required for robbery," and identically for carjacking. The trial court denied this request. Defendant's argument on appeal on this point is perhaps slightly meatier than his argument as to sufficiency. Defendant correctly cites *State v. Owens*, 20 S.W.3d 634, 637 (Tenn. 2000), for the proposition that "the act of violence or of putting a person in fear must precede or be concomitant to or contemporaneous with the taking of property to constitute robbery." Here ends the meat, however, and we return to bones. The rest of his argument consists of conclusory assertions, without citations to the record or to authority, that the carjacking and robbery statutes are "functionally identical," there existed "a genuine factual issue . . . as to whether the use of force or intimidation preceded the taking," that the trial court should have issued his proposed instruction (making no mention of whether it accurately states the law), and that this alleged transgression was not harmless. "[C]ourts cannot and should not shoulder the burden of fashioning arguments of the parties who have chosen not to do so for themselves." *City of Memphis v. Edwards by & through Edwards*, ___ S.W.3d ___, No. W2022-00087-SC-R11-CV, 2023 WL 4414598, at *2 (Tenn. July 5, 2023). This issue is waived.

Finding all of Defendant's issues waived, we affirm the judgments of the trial court.

s/ Timothy L. Easter
TIMOTHY L. EASTER, JUDGE

- 5 -